[Crim. No. 13414. Second Dist., Div. Five. Feb. 29, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. THOMAS CRAIG MATOLA, Defendant and Appellant.

Richard A. Weiss, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Phillip Samovar, Deputy Attorney General, for Plaintiff and Respondent.

HUFSTEDLER, J.—Matola was charged by information with violation of section 211 of the Penal Code (count I, robbery) and with violation of section 245 of the Penal Code (count II, assault by force). Upon the People's motion, count II was dismissed. Matola pleaded not guilty. On the date of trial Matola's counsel made a motion to sever his trial from that of his codefendant, Lotto. The motion was denied upon the prosecuting attorney's representation to the court that the confession could and would be edited to delete all reference to Matola. The motion was not renewed. The codefendants were both convicted. A jury found Matola guilty of grand theft from the person, in violation of subdivision 2, section 487 of the Penal Code, a lesser but necessarily included offense in that charged in count I of the information. His motion for new trial was denied, probation was denied, and he was committed to the Youth Authority for the term prescribed by law. Matola appeals from the judgment.

On appeal Matola contends: (1) The trial court erred in denying Matola's motion to sever his trial from that of his codefendant, Lotto; (2) the trial court erred in failing to declare a mistrial when the prosecuting attorney elicited testimony from Lotto relating to the same subject matter which had been stricken from Lotto's confession; and (3) the trial court erred in failing to declare a mistrial when Lotto was allowed to answer his own counsel's questions concerning the portions of his confession theretofore stricken by the court.

### Summary of the Evidence

According to the prosecution's witnesses the facts were these: On July 30, 1966, at 7 o'clock in the evening Margaret Stanley was walking down Venice Boulevard. Two boys struck her in the back, knocked her down, and jerked on her purse. The purse fell to the ground, and the boys picked it up and ran. Miss Stanley tried to pursue them but she fell. She saw Messrs. McKenzie and Bilderback nearby and told them what had happened. The two men had seen the boys run by and had also seen one of the boys stooped down by a bush and the other, later identified as Matola, standing on the sidewalk.

After Matola and Lotto left, McKenzie went over to the bush, retrieved the victim's purse and gave it to the police. McKenzie and Bilderback followed Matola and Lotto. Officer Lucia, at about 7:20 p.m., received a report of the purse snatching on his police radio. The two men flagged down the officer, who talked with them. Matola and Lotto were arrested shortly thereafter.

At the time of their arrest Officer Lucia advised Lotto and Matola of their constitutional rights in a manner adequate to comply with the *Dorado-Escobedo-Miranda* cases.[1] After the boys had been taken to the police station, Lotto was interrogated by Officer Rube, who again advised Lotto of his constitutional rights. Lotto said he understood his rights. Lotto made a confession, stating: "What will happen to me if I confess to this? I guess I am just a stoop. S-t-o-o-p. I grabbed the old lady's purse. *Don't know whether Mitch [Tommy Matola] hit her or not.* No, I wasn't drunk, *but he kept egging me on to do it.* There was only a five Marlboro pack with smoked butts in it; so I laid it on the ground. *Suppose if someone told me to jump off the pier, I would.* Don't know why I did it. I have a job and make good money." (Italics added.)

Outside the presence of the jury Lotto's counsel conducted a *voir dire* examination of the officer who took the confession, trying to establish that the confession was involuntary. The court denied his motion to suppress the confession. Immediately thereafter Matola's counsel moved to delete the italicized words from the confession. The court granted Matola's motion and Lotto's counsel promptly objected on Lotto's behalf, pointing out to the court, "The statements that are being deleted are probably proper under the *Aranda* case, but nevertheless would prejudice defendant Lotto, and I would like the record to so indicate." The court overruled his objection.

At that moment the *Aranda*[2] crunch was foreseeable, but no one saw quite how the impact would occur or how to avert it. Matola's counsel could have renewed his severance motion, but he had little reason to believe at that time that round two would be more successful than round one, particularly since

[1] *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

[2] *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265].

the court had granted his motion to strike the italicized words from the confession. If the words stayed erased, his client had no cause to complain. He could not predict the strategy of counsel for the codefendant and until something else happened he could not move for a mistrial. Lotto's counsel did all he could to protect his record. If the trial court had had the gifts of Cassandra, it could have invited mistrial motions and, perhaps, aborted the proceedings without jeopardy.

The moment passed and the edited confession was introduced by the prosecution before the jury. Lotto's counsel did not attempt to bring out the deletions in cross-examining the police officer. The People rested and had the case then closed, *Aranda* would have faded away. This was not to be.

Lotto was called to the stand to testify on his own behalf and trouble began with the first question put to him.

''Q. Mr. Lotto, tell us in your own words what happened as to the events that occurred on the 30th, of the events as testified by the previous witnesses. Start at the beginning and tell the jury what happened.''

''A. Well, Tommy and I was walking up . . .''

The court interrupted by calling a recess. The 20-minute recess is a blank in the record. When service was restored, the direct examination began: ''Mr. Lotto, directing your attention to the day of the alleged robbery, what time were you arrested by the police? A. About 6:30, 7:00 o'clock. ''Q. . . . At the time you were arrested was the defendant Matola also arrested? A. Yes.'' The remainder of the direct examination was confined to the circumstances of Lotto's arrest and his subsequent interrogation and confession. Nothing more was said about Matola, and the deletions from the confessions were untouched.

*Aranda* started on its inexorable course with the prosecutor's cross-examination of Lotto. The prosecutor moved in slowly, working from the station-house interrogation backwards to the arrest and ultimately to the circumstances anteceding the arrest: ''Q. Had you been with Tommy all day?'' Both codefendants' counsel objected on the ground that the examination was beyond the scope of direct. The court overruled the objections, and Lotto said, ''Yes.'' Over repeated objections on the same ground, the court permitted the prosecutor to bore in on the activities of both defendants before their arrest. The prosecutor got Lotto to admit that he grabbed the victim's purse, but he denied that he struck her. Lotto testified that after he grabbed the purse, he and Matola

ran away. He was asked, "When did you decide to rob her? A. By the time we got next to her. Q. Was it your idea? A. Not really, partly mine. Well, it was Tommy's idea in a way. Q. Who first brought up the subject of robbing Miss Stanley, taking her purse? A. Tommy."

With Matola named as the principal instigator by Lotto's testimony on cross-examination, Matola had little choice in strategy. He took the stand. His story was that he and Lotto were together, beginning in the midmorning on the day of the robbery. As they were walking down the street, Lotto told Matola that he was going to snatch the old lady's purse because he needed to make up a $10 loss he had had that day. Matola thought he was kidding, but when he saw Lotto approaching the lady, Matola began to run away. He ran past the victim and did not slow down until he reached the corner, then he ran two more blocks until he stopped to catch his breath. Lotto (who was carrying something) ran, too, and caught up with Matola. Matola denied any complicity in the robbery or the striking of the victim.

The denouement was inevitable. Lotto was recalled for redirect examination. His counsel took him word for word through the unexpurgated version of his confession. Matola's counsel interposed no objections. No further motions were made. The case went to the jury, and both defendants were convicted.

### Error in Overruling Objections

Section 1323 of the Penal Code[3] in relevant part states that where a defendant offers himself as a witness "he may be cross-examined by the counsel for the people as to all matters about which he was examined in chief." After quoting this language the court said, in *People* v. *Zerillo* (1950) 36 Cal.2d 222, 228 [223 P.2d 223] : "This does not mean that the cross-examination must be confined to a mere categorical review of the matters, dates or times mentioned in the direct examination. [Citations omitted.] It may be directed to the eliciting of any matter which may tend to overcome or qualify the effect of the testimony given by him on his direct examination. [Citations omitted.]" Defendant, according to the leading case of *People* v. *Teshara* (1904) 141 Cal. 633, 638 [75 P. 338], ". . . can be cross-examined with respect to facts or

---

[3]This section has been repealed, operative January 1, 1967. The relevant clause is recodified in sections 761 and 773, subdivision (a) of the Evidence Code, and, as the comment to section 773, subdivision (a) indicates, the substance of section 1323 of the Penal Code has been restated.

denials which are necessarily implied from the testimony in chief, as well as with respect to facts which he expressly states. And he cannot, by beginning his narrative at a particular moment of the occurrence, limit the cross-examination to the same exact period. The cross-examination may extend to the whole transaction, of which he gives a part, and which occurred in immediate connection with the part he relates, shortly before or after, and in which he must have been concerned, or of which he may be reasonably supposed to have had knowledge.'' (Quoted in part in *People* v. *Diaz* (1962) 206 Cal.App.2d 651, 669 [24 Cal.Rptr. 367]; *People* v. *Goldstein* (1948) 84 Cal.App.2d 581, 588 [191 P.2d 102].)

 Although the scope of cross-examination delineated by these rules is quite generous, it is not generous enough to justify the prosecutor's excursion into the circumstances anteceding the arrest of the codefendants. The fragment of Lotto's answer on direct examination, ''Well, Tommy and I was walking up . . . ,'' cut off as it was by the court, cannot be deemed to have opened the door exposing to the cross-examiner's probe the vista of everything that happened during the promenade. Lotto did not testify ''to a state of things contrary to and inconsistent with the evidence of the prosecution, thus indirectly denying the testimony against him,'' thus opening the inquiry into the facts which were impliedly denied. (*People* v. *Teshara, supra,* 141 Cal. at p. 638.) Lotto's story amounted to an avoidance of the confession, not a denial of the prosecution's testimony against him. (*Cf. People* v. *Robinson* (1964) 61 Cal.2d 373, 392-393 [38 Cal.Rptr. 890, 392 P.2d 970].)

The court erred in overruling the objections based on the prosecutor's exceeding the bounds of proper cross-examination.[4] The error might not have been prejudicial to Matola, however, if the *Aranda* problem had not permeated the whole trial. It is the combination of *Aranda* with the improper cross-examination of Lotto which compels us to reverse.

### Application of Aranda

Section 1098 of the Penal Code provides that defendants jointly charged with any public offense must be tried jointly unless the court in its discretion orders separate trials. Recog-

---

[4]Matola's counsel could not have successfully objected on the ground that the prosecutor's cross-examination of Lotto exceeded the scope of direct, if Lotto's own counsel had not first objected, because only the party calling the witness can ordinarily object on such ground. (*Burke* v. *Dillingham* (1927) 84 Cal.App. 736, 741 [258 P. 627].)

nizing that the practice of permitting joint trials when the confession of one defendant implicates a codefendant can be prejudicial and unfair, the Supreme Court adopted the following rules of practice to implement section 1098 in *People* v. *Aranda, supra,* 63 Cal.2d 518, 530-531: "When the prosecution proposes to introduce into evidence an extrajudicial statement of one defendant that implicates a codefendant, the trial court must adopt one of the following procedures: (1) It can permit a joint trial if all parts of the extrajudicial statements implicating any codefendants can be and are effectively deleted without prejudice to the declarant. By effective deletions, we mean not only direct and indirect identifications of codefendants but any statements that could be employed against nondeclarant codefendants once their identity is otherwise established. (2) It can grant severance of trials if the prosecution insists that it must use the extrajudicial statements and it appears that effective deletions cannot be made. (3) If the prosecution has successfully resisted a motion for severance and thereafter offers an extrajudicial statement implicating a codefendant, the trial court must exclude it if effective deletions are not possible."

█ Criminal defendants thus cannot be jointly tried if the confession of one of them will be introduced and the confession cannot be effectively edited to remove any statement which can be used against the nondeclarant defendant. *Aranda* does not purport to spell out the mechanics of the editorial process, nor to delineate precisely the appropriate procedure for attacking a continued joint trial if a deletion reappears at the instance of anyone other than the prosecutor.[5] Rules (1) and (3) however, do recognize that initial editing may apparently sanitize a confession and yet, due to later events, may prove ineffective.

In ruling upon a severance motion, the trial court must be

---

[5]"The rules governing the cases in which deletion would be a permissible alternative [to separate trials] cannot be set out fully. Use of the procedure would depend on the evidence linking the defendants together before and after the crime and on the actual statements made by the declarant defendant.

"In the present case, deletion would have been an effective solution to the joint trial problem. All that Martinez's confession added to the case against Aranda was Aranda's identity. No evidence linked the two together at any other time relevant to the commission of the robbery. Deleting all references to Aranda would not have prejudiced Martinez and what remained would have prejudiced Aranda no more than if Martinez had in fact said that 'I was one of the persons who robbed the store but I will tell you nothing more.' " (*People* v. *Aranda, supra,* 63 Cal.2d at pp. 530-531.)

alert at the outset to factors which are harbingers of editorial failure. If the parts of the confession affecting a codefendant favor or may favor the confessing defendant, the deletion of those statements is not going to stick. The declarant's counsel will want to bring them out, either upon cross-examination of the person who testifies to the confession, or upon direct examination of the declarant if he takes the stand. Were he prevented from bringing out evidence favorable to his declarant client, to protect the nondeclarant, the declarant would himself be prejudiced by the joint trial.

The trial court in this case denied the motion to sever solely on the basis that the prosecuting attorney represented that the confession could and would be successfully edited. The trial court had no reason to doubt the prosecutor's good faith in so stating, but all the prosecutor could assure the court was that he himself would not offer the offending passages. His own restraint could not affect defense counsel's duty or strategy. Had the trial court closely examined the confession, including the proposed excisions, the ineffectiveness of the prosecutor's assurance would have been evident. The court prejudicially erred in denying the severance motion.

In view of our disposition of the central issues of the appeal, it is unnecessary to discuss the remaining contentions of the parties.

The judgment is reversed.

Kaus, P. J., and Stephens, J., concurred.