STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. GEORGE DAVID BARNETT, DEFENDANT-APPELLANT.

Argued February 3, 1969—Decided April 7, 1969.

*Cynthia M. Jacob,* Assistant Deputy Public Defender, argued the cause for appellant (*Richard Newman,* Deputy Public Defender, attorney).

*Matthew J. Scola,* Assistant Prosecutor, argued the cause for respondent (*Joseph P. Lordi,* County Prosecutor of Essex County, attorney).

The opinion of the court was delivered by

JACOBS, J. The defendant George David Barnett was indicted for murder and, after a joint trial with Ellis E. Jones, was convicted of murder in the second degree. He was sentenced to serve a term of 10-12 years and appealed to this Court as of right under former *R. R.* 1:2–1(c).

On December 3, 1966 Barnett and his wife went to the Newark apartment of his aunt, Laura Featherstone, to pick up their child. While there Barnett, who had been drinking rather heavily, argued with his wife and when his cousin Charles Featherstone interceded, he fought with him. Barnett left and then returned to the apartment and a second fight ensued between Barnett and Charles. Barnett then drove to his home in Westfield where he washed and changed his clothes. He then went to a bar where he met Jones. Barnett, Jones and three others left the bar and went to Barnett's car, planning a stop in Newark. Before

entering Barnett's car Jones went to his own car where he obtained something and put it in his belt. Barnett testified that he did not at the time know that the thing Jones obtained was a knife. In Newark, Barnett and Jones left Barnett's car and went to the building where the Featherstone apartment was located. They met Charles on the stairway and Jones asked Charles why he had beaten Barnett earlier that evening. When Charles told him to mind his business, Jones lunged or swung at Charles with his knife.

Jones testified at the trial that he missed, that he went downstairs and that he then heard Charles say to his sister "Junie stabbed me", meaning Barnett who was known as "Junior" or "Junie". Barnett testified that Jones went downstairs after Charles had said "Junie" to his sister. The conflict in the testimony as to whether Jones had gone downstairs before or after Charles spoke to his sister raised a question as to whether Barnett, despite his own testimony that he had no knife in his possession, actually did have one and had stabbed Charles out of the view of Jones, with the ensuing statement by Charles to his sister that "Junie" had stabbed him.

Barnett and Jones left the apartment building at about 11:45 P.M. At about 1:55 A.M. (December 4th) Barnett was arrested in Westfield for drunken driving. Lieutenant Bell advised him of his constitutional rights, that he was under arrest for driving under the influence of intoxicating liquor, and that he was wanted in connection with a stabbing in Newark. Officers of the Newark Police Department went to Westfield and took Barnett to the Newark Police Headquarters, arriving there at about 4:30 A.M. The *Miranda* warnings were read to Barnett and he was informed that Charles was dead. At that point Barnett said, "Is he really dead —Jones stabbed him". At about 2:30 P.M. Barnett was again advised of his rights. He signed a preamble which embodied the constitutional warnings and in which he stated that he was willing to give a statement and did

not want a lawyer. After he had been asked a few questions, his family walked in and the oral interrogation continued in their presence.

Later a written statement was taken and was signed at about 9:22 P.M. In it Barnett told about his earlier argument and fight with Charles, about his return to the apartment building with Jones and about seeing Jones lunge at Charles with his knife. He denied that he had any knife or other weapon in his own possession or that he knew that Jones had a knife on him at any point before Jones and Charles confronted each other on the stairway. In his own statement to the Newark police, Jones stated that he lunged at Charles and that Charles ran back to the apartment door, banged at the door and told the lady who answered that "Junie" had stabbed him. Jones also stated that he later told Barnett that "I had missed the guy with my knife" and that Barnett replied "that's alright" —"he worked with me anyway". Barnett was first brought before a magistrate on December 5th, the matter was adjourned twice, and before the scheduled adjourned date Barnett was indicted for murder.

Before trial, counsel for Barnett moved for a severance, pointing out that since Barnett's statement tended to inculpate Jones and exculpate Barnett, its admission without excision would be prejudicial to Jones, and its admission with excision would be prejudicial to Barnett. The trial judge denied the motion, saying that he would deal with the matter of excision at the trial. At the trial, the judge stated that he would take a "strict interpretation" of *State v. Broxton,* 49 *N. J.* 373 (1967) and would delete all references to Jones from Barnett's statement and all references to Barnett from Jones' statement. Counsel for Barnett voiced firm objection, but the trial judge followed his stated course. We are satisfied that this was error and was prejudicial to Barnett. Barnett's statement prior to excision told about Jones' lunging at Charles with his knife, about Charles jumping back and calling "Junie", and

about Charles telling his sister to open the apartment door and again calling "Junie". After excision and as admitted into evidence as part of the State's case, the statement made it appear as though Barnett alone confronted Charles on the stairway and that Barnett then saw Charles run towards the apartment, telling his sister to open the door and calling out "Junie". As counsel for Barnett expressed it during the trial, the redacted statement put Barnett at the scene, eliminated all reference to someone else having knifed Charles and left the impression that Barnett had committed the crime. Similarly, in dealing with Jones' statement in which he acknowledged lunging at Charles with his knife, the references to Barnett which were helpful to him and supportive of his story were excised and the statement as thus redacted was received in evidence during the State's case.

*State v. Young*, 46 *N. J.* 152 (1965) set forth the procedure to be followed where two or more defendants are indicted for the same offense and the prosecution contemplates using a confession by one defendant which implicates a codefendant. If a joint trial is planned, the prosecution should move before trial* for a judicial determination of whether there can be an effective deletion of all references to the codefendant "without prejudice to the confessing defendant". 46 *N. J.*, at 159; see also *People v. Aranda*, 63

---

* *R. R.* 3:15–2(a) as recently amended, effective September 8, 1969, reads as follows:

*Motion by State Before Trial.* If 2 or more defendants are to be jointly tried and the prosecuting attorney intends to introduce at trial a statement, confession or admission of one defendant involving any other defendant, he shall move before trial on notice to all defendants for a determination by the court, in camera, as to whether such portion of the statement, confession, or admission involving such other defendant can be effectively deleted therefrom. The court shall direct the specific deletions to be made, or, if it finds that effective deletions cannot practically be made, it shall order separate trials of the defendants. Upon failure of the prosecuting attorney to so move before trial, the court may refuse to admit such statement, confession or admission into evidence at trial, or take such other action as the interest of justice requires.

*Cal. 2d* 518, 47 *Cal. Rptr.* 353, 407 *P. 2d* 265, 272–273 (1965). If such effective deletion is not feasible, separate trials are required since cautionary instructions will no longer suffice. See *Bruton v. United States,* 391 *U. S.* 123, 88 *S. Ct.* 1620, 20 *L. Ed. 2d* 476 (1968); *Roberts v. Russell,* 392 *U. S.* 293, 88 *S. Ct.* 1921, 20 *L. Ed. 2d* 1100 (1968).

■ As Justice Proctor's opinion clearly indicates (46 *N. J.,* at 159), the deletion or redaction must not only avoid any prejudice to the implicated codefendant but must also avoid any prejudice which might result to the confessing defendant from the introduction into evidence of an incomplete confession which unfairly excludes exculpatory statements or presents a distorted picture. The point is well illustrated by the holding of the New York Court of Appeals in *People v. La Belle,* 18 *N. Y. 2d* 405, 276 *N. Y. S. 2d* 105, 222 *N. E. 2d* 727 (1966). There the defendants Edward La Belle and his brother Richard were indicted for murder. Richard's pretrial motion for severance was denied and the brothers were tried jointly. A statement by Richard which tended to exculpate him and implicate his brother Edward was redacted so as to eliminate practically all reference to Edward and was admitted into evidence in its redacted form. The jury returned a verdict of guilty against both brothers but, on appeal, the conviction of Richard was reversed. In his opinion for the Court, Judge Burke pointed out that if there had not been a joint trial, Richard would clearly have been entitled "to have his entire statement, including the exculpatory portions, put into evidence, rather than this warped version of what he had told the State Police." 276 *N. Y. S. 2d,* at 109, 222 *N. E. 2d,* at 729. See *People v. Loomis,* 178 *N. Y.* 400, 70 *N. E.* 919 (1904) citing 2 *Barbour, Criminal Law* 462:

In all cases the whole of the confession should be given in evidence, for it is a general rule that the whole of the account which a party gives of a transaction must be taken together, and his admission of a fact disadvantageous to himself shall not be received without receiving at the same time his contemporaneous assertion of a fact

favorable to him, not merely as evidence that he made such assertion, but admissible evidence of the matter thus alleged by him in his defense. 70 *N. E.* at 921.

See also *State v. Cohen*, 97 *N. J. L.* 5, 9 *(Sup. Ct.* 1922) where Chief Justice Gummere noted that "it is undoubtedly the general rule that whenever the statement of a party is put in evidence, all that was said by him at the same time and upon the same subject-matter is admissible; and that the whole of it should be taken and considered together." *Cf. State v. De Paola*, 5 *N. J.* 1, 19 (1950) ; *Walters v. State*, 156 *Md.* 240, 144 *A.* 252, 253 (1929) ; *People v. Hepner*, 285 *Mich.* 631, 281 *N. W.* 384, 387 (1938) ; *Arthur v. Commonwealth*, 307 *S. W. 2d* 182, 185 *(Ky.* 1957) ; 2 *Wharton's Criminal Evidence* § 361, at 69–70 (1955) ; see 7 *Wigmore, Evidence* § 2102 *(3d ed.* 1940) ; *McCormick, Evidence* § 56 (1954).

█ While commenting in *People v. La Belle, supra,* on the denial of the motion for severance, Judge Burke pointed out that it should have been apparent to the trial court that redaction of Richard's statement so as to insure a fair trial to Edward would necessarily result in depriving Richard of a fair trial. He stated that, the injustice in allowing the prosecution to put in only those portions tending to incriminate while excluding those portions tending to exculpate, was manifest and that Richard could be protected only by means of a separate trial in which his statement would have to be offered, if at all, "in such form that his version of what occurred remained clear and unaltered in substance." 276 *N. Y. S. 2d,* at 110, 222 *N. E. 2d,* at 730. So in the case before us, Barnett's undoubted right to a fair trial required that his statement be introduced, if at all, in substantially its original form which contained much exculpatory material. Since it was apparent that this could not be done in a joint trial without prejudicing the codefendant Jones, Barnett's motion for severance should have been granted. Jones did not join in the motion and suffered no prejudice by the joint nature of the trial or by the intro-

duction of his own redacted statement which did not exclude any exculpatory material on his part or distort his version of the occurrence. His appeal on separate grounds which we have found to be without merit, has this day been rejected and his conviction affirmed. See *State v. Jones*, 53 *N. J.* 568 (1969).

The error in the denial of Barnett's motion for severance and in the State's introduction of his statement in redacted form was not cured by anything which occurred later in the trial. Although Barnett testified in his own defense, his counsel, following the course indicated by the trial court's rulings, did not on direct examination address his inquiries to the material excised from Barnett's statement nor did he make any effort to introduce the portions of the statement which had been deleted. It may be noted that the State's case not only included Barnett's redacted written statement but also excluded, at the court's direction, the oral statements by Barnett tending to implicate Jones and exculpate Barnett. It may be doubted that the harm which resulted to Barnett from the manner in which the State's case was thus presented, would have been obviated even if the trial court had thereafter permitted the defense to supply the deleted portions of the statement. At all events, we are satisfied that the error was harmful to Barnett and that fairness requires that he be granted a new trial; and in the light of this determination we consider it unnecessary to deal here with any of the remaining points advanced in the Public Defender's brief on the defendant's behalf.

Reversed.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 7.

*For affirmance* — None.