**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donald Jacob ARCENEAUX, Defendant-
Appellant.**

**No. 19727.**

United States Court of Appeals,
Ninth Circuit.

Jan. 25, 1971.

Ronold J. Mullin, of Mullin, Hoffman & Rodriguez, San Francisco, Cal., for the appellant.

James L. Browning, Jr., U. S. Atty., Jerrold M. Ladar, Chief, Crim. Div., San Francisco, Cal., for the appellee.

Before HUFSTEDLER and KILKEN-NY, Circuit Judges, and SMITH,* District Judge.

---

* The Honorable Russell E. Smith, Chief Judge of the United States District Court for the District of Montana, sitting by designation.

**RUSSELL E. SMITH, District Judge:**

Defendant Arceneaux admittedly participated in a bank robbery. The defense, the only possible defense in view of the otherwise overwhelming evidence of guilt, was entrapment based on the activity of Easley, one of two robbers killed in the course of the robbery. It is not claimed that there was any error in the presentation of the Government's case, but it is claimed that defendant's Sixth Amendment right to confrontation was violated, when in the defendants' case the attorney for LaFleur, a co-defendant, called Padden, an F.B.I. agent, as a witness and elicited from him the substance of a telephone conversation between the agent and Easley relating to the bank robbery.

The portion of the conversation as to which objection is made was to the effect that Arceneaux was the originator of the plan to rob, had selected the bank to be robbed, and had provided the guns to be used; that Easley had indicated to Arceneaux an intention to participate in the robbery; that Padden told Easley that under no circumstances should he take part in the robbery; that Easley agreed he would not. This evidence indicating that Arceneaux was the prime mover of the scheme to rob did tend to diminish his defense of entrapment.

The existence of the defense of entrapment has been supported on two diverse grounds. In Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L. Ed. 413 (1932) it was said that the entrapped defendant is not guilty because Congress did not intend that the letter of the law should extend to those who did prohibited acts as a result of the "creative activity" of agents of the Government. This view was recognized by the majority in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L. Ed.2d 848 (1958) but was not reappraised because the issue had not been presented by the parties. The concurring opinion in Sherman suggests that an entrapped defendant is nonetheless guilty but that the federal courts on policy grounds refuse to enforce a law as to a guilty defendant where the enforcement depends upon lawless means.

Whichever theory may be adopted if the Supreme Court is some day called upon by the parties to reappraise the rationale of Sorrells v. United States, supra, the fact remains that it is the unbecoming conduct of the Government which calls the defense of entrapment into play. The Court in Sorrells uses the terms "gross perversions of its purpose", and "processes * * * abused by the instigation by government officials." In Sherman the majority opinion indicates that a determination of entrapment is made by examining "the conduct of the government agent." The concurring opinion uses the more forceful terms " * * * the methods employed on behalf of the Government to bring about conviction cannot be countenanced * * * 'I think it is a less evil that some criminal should escape than the government should play an ignoble part' " and "means that violate rationally vindicated standards of justice. * * * "

Whatever Easley may have done here was not important unless in some way his conduct could be charged to the Government. That conduct might have been charged to the Government by proof of an agency, express, as in Sorrells v. United States, supra, or implied, as in Sherman v. United States, supra, or if there was no agency in the ordinary sense, by proof that there was something about what the Government did with respect to what Easley did which was "ignoble".

In his case in chief Arceneaux related conversations between himself and Easley which if believed would have been sufficient to warrant a jury in finding that Easley had been guilty of the kind of "creative activity" which constitutes an entrapment. Arceneaux then called witnesses to prove Easley's relationship with the F.B.I.

Avery, a newsman, testified that he had taken from Easley's room after his death fifteen to twenty "Wanted by the F.B.I." flyers, two books dealing with

crime and criminals, some false mustaches and a San Francisco Police Department mug shot.

Mrs. McDonald, a friend of Easley's, testified as follows: About a week and a half before the robbery Easley stopped the car in which they were riding and talked to two men, one of whom asked "Was it all set up?", to which Easley replied "Yes." She did not recognize the men but just after the meeting Easley told her they were F.B.I. agents. Before the incident Easley was broke; immediately after, he had money. On the Monday or Tuesday prior to the robbery Easley told her that he was going to rob a bank and as a result get some big money but that he couldn't get killed or go to jail—"the man—the F.B.I." would be told.

Charlene Washington testified that Easley, in the course of applying for an apartment to rent, made a phone call which he said was to the F.B.I. and in which he identified himself by a number; that on the day before the robbery Easley having learned over her telephone that his sister had been killed in an airplane accident, said he was going to tell the F.B.I. they had to carry on by themselves, that he wasn't going to go through with the big case he was with.

Easley's mother testified that Easley had told her the F.B.I. had set it up for him to be on the plane in which his sister was killed; that he was supposed to rob a bank and it was set up by the F.B.I., but that he wasn't going to go through with it.

One Garrison testified that Easley told him he had learned from the F.B.I. that his sister had been killed in an air-

plane accident and that he was in a big deal which he was going to quit.[1]

Arceneaux on his own behalf, called the F.B.I. agent Padden (whose testimony as elicited by co-defendant LaFleur forms the basis of the argument) and proved by him that Easley had been paid $500.00 by the F.B.I., and that Easley had told Padden that the owner of the get away car was to report that it had been stolen after he (the owner of the car) heard that the robbery had been committed.

■ If all of this were sufficient to permit a finding either that Easley was an agent, express or implied, of the United States or that the Government knew what Easley was doing and was for that reason guilty of some kind of reprehensible conduct which would make a valid defense for entrapment, then Arceneaux, having opened the subject, could not object if the Government proved just what its conduct was.[2] It then had a right to show exactly what the examination of Padden by LaFleur showed, which was basically that the F.B.I. had paid Easley $500.00 for information leading to the arrest of one of the F.B.I.'s "ten most wanted" persons and $30.00 for other miscellaneous information, but had no standing agreement of any kind with him, and did not know that Easley was guilty of any "creative activity" as to the robbery in question.

■ Proof of the conversation between Padden and Easley did not violate the hearsay rule because it did show a relevant state of mind,[3] that is, that the F.B.I. was not aware of any "creative activity" on the part of Easley and con-

---

1. The hearsay objections which were made to some but not all of this evidence were overruled, but the court told the jury that it could not consider the words as proof of the truth, that is, that Easley was an employee of the F.B.I. but only that he represented himself to have been so employed.

2. We regard the fact that the evidence came in in LaFleur's (the co-defendant's) case in chief rather than in the Govern-

ment's rebuttal as a matter of the order of proof and we believe that if the evidence was properly admissible against Arceneaux no prejudice results from the fact that LaFleur and not the Government put the evidence in. Also, if the evidence was properly admissible there was no prejudice resulting from a refusal to sever the trials.

3. Wigmore on Evidence, 3rd Edition, § 1789.

sequently was not guilty of some ignoble act.[4]

■ The rule of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) that a cautionary instruction may not be relied upon to cure a deprivation of the right of confrontation was not violated here.[5] Just as a defendant by taking the witness stand may waive his privileges against self-incrimination to the extent of a proper cross-examination [6] so a defendant who opens up the relationship between the United States and a dead man by proof of the words of that dead man waives his right to object to proof by the United States of its version of that relationship.[7]

The judgment is affirmed.

HUFSTEDLER, Circuit Judge, dissenting:

To avoid the impact of Bruton v. United States (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, the majority expands the defense of entrapment beyond the bounds of any federal case and applies that newly created doctrine to affirm Arceneaux's conviction despite the fact that the jury was not instructed on the law as the majority now pronounces it.

Easley's statements against Arceneaux were inadmissible unless those statements were relevant for a nonhearsay purpose. The Bruton problem inheres from the admission of those statements with the district court's instruction that the jury should consider them only against Arceneaux's codefendant. To bypass Bruton, the majority has to find a way to make the evidence admissible against Arceneaux, and to do that, it is necessary to discover an issue to which

Easley's statements could be relevant without regard to the truth of the matters asserted. That feat is accomplished by holding that the defense of entrapment is available if the Government's state of mind was ignoble even if the person who induced the crime was not an agent of the Government. The majority then reasons that Easley's statement was relevant to the issue of the Government's state of mind in that it tended to prove that the Government was not ignobly motivated.

There may well be merit to the extension of entrapment propounded by the majority, but the law in this circuit has been long settled that the defense rests on an inducement to commit the crime by one who is a Government agent and that the Government's state of mind, ignoble or pure, is irrelevant. (E. g., Notaro v. United States (9th Cir. 1966) 363 F.2d 169; Gonzales v. United States (9th Cir. 1958) 251 F.2d 298.).

If the doctrine of entrapment should be thus expanded, due process forbids its application to a defendant who was not given any opportunity to try the issue. The jury was told not to consider the evidence at all against Arceneaux. It was never instructed that the Government's knowledge of Easley's inducement would have been enough to prove entrapment even if Easley were not a Government agent. Indeed, it was instructed that entrapment was possible "if Harry Easley had acquired the status of an agent or employee of the government prior to the attempted bank robbery."

I turn to the Bruton question. The Government argues that Bruton should not apply because it involved a codefendant's confession instead of a third person's damaging statements, and, in Bru-

---

4. The judge twice told the jury that it could not consider the Padden testimony as proof of the truth of the facts and that as to Arceneaux they could not be considered at all.

5. We do note that the admission of the evidence here did not offend the hearsay rule and that Bruton expressly refrained from

the expression of an opinion in cases where the hearsay rule is not violated. See, 391 U.S. at 128, fn. 3, 88 S.Ct. 1620.

6. Myers v. United States, 390 F.2d 793 (9 Cir. 1968).

7. See, Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954).

*ton,* the evidence was introduced by the Government and not, as here, by a codefendant. I think that these differences are not enough to withdraw Arceneaux from the reach of *Bruton.*

The teaching of *Bruton* is that reversal is required whenever evidence, inadmissible against one defendant, is admitted against a codefendant despite limiting instructions whenever "the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." (391 U.S. at 135, 88 S.Ct. at 1627.) The Court in *Bruton* was particularly concerned about a codefendant's confession, because the truth of one defendant's accusations against another is suspect and because the truth of such accusations can rarely be tested by cross-examination. Easley's statements were just as suspect and just as damaging as the codefendant's confession in *Bruton.* Easley's death placed him farther beyond cross-examination than would the Fifth Amendment. I would hold that the introduction, over objection, of a third person's damaging hearsay statements against a defendant who cannot subject the declarant to cross-examination at the time of trial requires reversal, although the jury has received a limiting instruction. (*Cf.* Dutton v. Evans (1970) 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213; Pointer v. Texas (1965) 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923; United States v. Jones (2d Cir. 1968) 402 F.2d 851.)

I do not think that the result should be different in this case because the hearsay evidence was offered by a codefendant and not by the Government. The impact upon the defendant of the introduction of that hearsay is the same regardless of who produced it. There is no suggestion in *Bruton,* as there was in *Miranda* and *Mapp,* that the Court's purpose was to deter improper governmental conduct; rather, the Court's aim was to protect a defendant from inadmissible damaging evidence that would

be used against him and that he could not effectively challenge. Moreover, this is not a case in which the Government was unaware of the possibility that one of the codefendants would try to use the words of Easley to vindicate himself at the expense of his codefendant, because both defendants indicated their intent to rely on entrapment when each moved for severance. The *Bruton* problem was hovering at the threshold of the case. (*Cf.* People v. Matola (1968) 259 Cal.App.2d 686, 66 Cal.Rptr. 610.)

I would reverse the conviction and remand the cause for a new trial.