384 A.2d 1179

**COMMONWEALTH of Pennsylvania**

v.

**Henry W. PFAFF, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 17, 1977.

Decided March 23, 1978.

462

John W. Packel, Chief, Appeals Div., Defender Ass'n, Jonathan Miller, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., James A. Shellenberger, Asst. Dist. Atty., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

Appellant, Henry Pfaff, was tried before a judge and a jury on charges of corrupting the morals of a minor, statutory rape, and forcible rape. On March 22, 1972, the jury found appellant not guilty of forcible rape and guilty of statutory rape and corrupting the morals of a minor. Following the denial of post-verdict motions, appellant was sentenced to two and one-half to seven years imprisonment for statutory rape, and sentence was suspended on the other conviction. No appeal was taken from this judgment of sentence.

Appellant filed a PCHA petition six months later and, following a hearing, was granted the right to file an appeal as though timely filed. An appeal was taken to the Superior Court, which affirmed the judgment of sentence. *Commonwealth v. Pfaff*, 233 Pa.Super. 153, 335 A.2d 751 (1975). We granted appellant's petition for allowance of appeal and this appeal followed.

As summarized by the Superior Court, the allegations against appellant are as follows:

"According to the testimony of the complainant, Brenda Lee Calder, in July, 1971, she was on her way home when she passed appellant, his brother, and his business partner, who were loading a truck with heavy appliances. Appellant's partner, Marlin Walters, started a conversation with the complainant, who was then 13 years old, and eventually offered her part-time employment in their used appliance store located in the Kensington section of Philadelphia. The complainant thereafter worked for three or four days from 10 a. m. to 6 p. m. Appellant took the girl to and from work during that period. After regular working hours on July 30, 1971, appellant arranged for Miss Calder to work that evening.

When they returned to work on that evening, the appellant ordered Miss Calder to go to the back of the store. From there appellant pushed the complainant down into

the cellar. Appellant followed her into the basement where he threatened her with physical violence if she did not perform sexual intercourse with him. After the act of intercourse, the complainant dressed herself and asked appellant to take her home. He complied, but only after threatening her with physical harm if she told anyone what he had done.

The complainant did not return to work after the sexual assault. She and her mother did, however, return to the store on a subsequent date at which time her mother demanded whatever wages were due her daughter. Finally, two weeks after the sexual assault, the complainant told her mother what appellant had done to her.

Thereafter, on August 13, 1971, Miss Calder and her mother reported the incident to the police. On that same day, Detective McKiernan accompanied Miss Calder to the appellant's appliance store when she pointed out the appellant as the man who had raped her. At that point the detective explained to the appellant the serious nature cf the charge made against him and asked if appellant would mind if the detective looked around the basement. Appellant proclaimed his innocence and granted permission to the detective to search the basement. Complainant had previously stated that she had been raped on a cot in the basement. Upon observing the cot, the detective arrested the appellant."

*Id.* 233 Pa.Super. at 156–57, 335 A.2d at 752–753.

Appellant raises several issues in support of his contention that the judgment of sentence should be reversed and a new trial granted. Because we believe one of these issues is meritorious and requires that appellant be granted a new trial, we need not now address the other issues raised.

Appellant argues that a new trial should be granted because certain prejudicial comments were made by the district attorney during summation of the evidence to the jury. This issue is being raised for the first time before us and thus has been waived. Appellant contends, however, in his brief and supplemental brief presented to this Court,

that each of appellant's two prior counsel, as well as present counsel, have been ineffective either for failing to object to the prosecution's summation, or failing to raise that issue in post-verdict motions or before the Superior Court. We agree. Because present counsel for appellant raises not only the ineffectiveness of two prior counsel who represented appellant at trial and in post-verdict motions, but also his own ineffectiveness in representing appellant before the Superior Court, the issue is properly before us. As stated in *Commonwealth v. Fox*, 476 Pa. 475, 383 A.2d 199 (1978), reversal of the judgment of sentence and remand for new trial is the proper remedy where counsel alleges his or her own ineffectiveness and it is apparent from the record before us that counsel's stewardship of the case did not meet the standards required by this Court. When the ineffectiveness of counsel is apparent from the record it would be a waste of judicial time not to decide the underlying issue when presented to us. The issue which we must decide therefore is whether it is apparent from the record before us that appellant has been denied the effective assistance of counsel concerning the issue of the district attorney's summation to the jury.

An accused has a constitutional right to the effective representation of counsel at trial. When trial counsel's actions, or failure to take action, cannot be said to have any reasonable basis designed to effectuate the accused's interest, this right has been denied. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). We have on many occasions taken the opportunity to specify the kinds of conduct which we deemed to be proper on the part of a prosecuting attorney. The prosecutor is a quasi-judicial officer with the duty to seek justice, not just convictions. *Commonwealth v. Gilman*, 470 Pa. 179, 368 A.2d 253 (1977); *Commonwealth v. Collins*, 462 Pa. 495, 341 A.2d 492 (1975); *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972).

Our advocacy system demands that defense counsel diligently protect the accused from the prejudice that can be

caused by prosecutorial overreaching. It is defense counsel's duty to bring such remarks to the attention of the trial court by proper objection. *Commonwealth v. Gilman, supra, Commonwealth v. Sampson,* 454 Pa. 215, 311 A.2d 624 (1973); *see also Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). Defense counsel's failure to so protect appellant's interest by allowing the prosecutor to make improper comments to the jury without objection cannot be said to have any reasonable basis designed to effectuate the accused's interests in securing a fair and impartial verdict from that jury. *See Commonwealth v. Humphrey,* 473 Pa. 533, 375 A.2d 717 (1977); *Commonwealth ex rel. Washington v. Maroney, supra.*

One convicted of crime also has a right to appeal, *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Commonwealth v. Herge,* 436 Pa. 542, 260 A.2d 787 (1970), and has the right to effective representation of counsel when taking that appeal. We are unwilling to conclude that appellate counsel effectively represents one convicted of a crime when appellate counsel, either through inadvertence or otherwise, fails to raise arguably meritorious issues on that appeal. One purpose of the appellate process is to guarantee as much as possible that the defendant's right to a fair and impartial trial is scrupulously honored. When appellate counsel fails to bring to the attention of the appellate courts facts which arguably indicate that trial counsel allowed the accused to be subjected to prejudicial prosecutorial conduct during trial, we are forced to conclude that appellate counsel's representation of the accused was also ineffective. *Cf. Commonwealth v. Humphrey, supra.* Because of appellate counsel's ineffectiveness, the accused is denied his right of appeal.

The comments made by the assistant district attorney at trial, and now complained of, are as follows (emphasis throughout is ours).

"I am just about fed up to here with the character assassination of a 13–year old girl. *I am absolutely certain that Mr. Pfaff,* Henry Walter Pfaff and his brother

Jack Pfaff *had conspired to assassinate the character
. . .*"

"Ladies and gentlemen, *Henry Walter Pfaff* and his brother Jack have *conspired to assassinate the character of a 13-year old girl.* The truth of the matter is that what they did, what Henry Walter Pfaff and what his brother has [sic] conspired in is the most criminal offense one can imagine."

"So [complainant] had to be taken home. And the defendant and his brother, the man that you had an opportunity to examine yesterday on the witness stand, *that kind of man,* drove her home with the defendant Henry Walter Pfaff. No wonder she didn't say anything. *The two of them, that combination is enough to intimidate anybody.*

Now, this detective saw that cot. I don't think anybody can imagine, although [defense counsel] wants you to think the detective has made that up. He has told you Brenda is lying. He has told you Brenda's mother is lying. And now he wants you to believe the detective is lying about a cot. Now, what difference does it make to this detective whether he saw a cot or he didn't see a cot. He is just telling you what he saw and he is telling you that because both Mr. Pfaff and his brother say there was no cot in that basement. And that's *an outright lie* because that's where Brenda was raped on that cot.

"Let's examine the kind of witness first that Henry Walter Pfaff makes. 'My God, no.' We heard that three times whenever he was asked did you attack this girl. *Well, the answer, ladies and gentlemen, my God, yes, I did, and I am ashamed of it.*

[Defendant] didn't tell us anything but a *pack of lies.*

Now, [defendant's brother] told us that [complainant] said she was 17. Well, *that's a bunch of malarkey.*

. . . . .

Every question that required a direct response [defendant's brother] didn't know the answer to. *Because he made it all up, that's why.*

. . . . .

And then Friday night, the night that supposedly [defendant's brother] and Brenda had an hour after midnight ran out of gas somewhere near the store at 'D' and Wyoming, this 30–year old man out with a 13–year old girl who he would have us believe he thought was 17, called the police to tell them about his predicament. A 30–year old man with a girl he wants everyone to think is 17, but I submit never was with him. *Obviously it is just a lie.*

. . . . .

If you believe [defendant's brother's testimony] ladies and gentlemen, if you, *if Mr. Pfaff expects you to believe that, then he is expecting a lot too much.*

. . . . .

Now, Henry Walter Pfaff and his brother *lied so obviously* that I don't need to review what I pointed out to you again."

. . . . .

"Brenda [the complainant] *didn't lie* on the witness stand.

. . . . .

And the detective explained what he meant. He didn't mean there was no cot there (in the basement); what he meant was there was no physical evidence for the police lab to take in and analyze. *And that's true.*"

. . . . .

"Henry Walter Pfaff sits there looking like any one of us. But *I told you he doesn't think like the rest of us, and he certainly didn't act like the rest of us, and he proved it by his overt, obvious lying, in conspiracy with his brother* on the witness stand."

In *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971) we vacated judgment of sentence and granted a new trial because of the following remark made by the prosecutor in the course of cross-examination of the defendant:

"I suggest to you that the reason that you didn't say anything about it is because what you have said about being beaten by the police is a malicious lie like all the rest of your testimony."

*Id.* 445 Pa. at 286, 285 A.2d at 493.

In *Potter, supra*, we said,

"The ABA Standards Relating to the Prosecution Function expressly state: 'It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence . . . of the defendant.' ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution and Defense Function § 5.8(b) (Prosecution Function) (Approved Draft 1970). The ABA Code of Professional Responsibility also provides that '. . . a lawyer shall not . . . (4) Assert his personal opinion . . . as to the credibility of a witness . . .'" ABA Special Committee on Evaluation of Ethical Standards, Code of Professional Responsibility, DR 7–106(C)(4) (1969). These standards are in response to the view that '. . . the cause should turn on the evidence, not on the standing of the advocate, and the witnesses must stand on their own.' ABA Standards, Prosecution, supra at § 5.8(b) (Commentary).

The prosecutor, in branding appellant's testimony as a 'malicious lie' exceeded the permissible bounds of cross-examination. Furthermore, he injected his highly prejudicial personal opinion of appellant's credibility into evidence, thereby clearly and improperly intruding upon the jury's exclusive function of evaluating the credibility of witnesses. See *United States v. Schartner*, 426 F.2d 470, 478 (3rd Cir. 1970); *People v. Lombardi*, 20 N.Y.2d 266, 282 N.Y.S.2d 519, 229 N.E.2d 206 (1967); *Commonwealth v. Maloney*, 365 Pa. 1, 5, 73 A.2d 707, 709 (1950); *People v.*

*Reese,* 220 Cal.App.2d 143, 33 Cal.Rptr. 561 (1963); *People v. Hickman,* 34 A.D.2d 831, 312 N.Y.S.2d 644 (1970)." *Id.* 445 Pa. at 286–287, 285 A.2d at 493.

As we stated in *Commonwealth v. Gilman, supra,* 470 Pa. at 189, 368 A.2d at 258,

"Our decisions have firmly established that the prosecutor may not express his personal opinion regarding a defendant's guilt, credibility or trial strategy. Nor may the prosecutor intentionally misstate the evidence given at trial in order to mislead the jury or refer to words a decedent-victim might have uttered were he still alive. We have ruled that '[t]he determination of guilt must *not* be the product of fear or vengeance, but rather intellectually compelled after a disinterested, impartial and fair assessment of the testimony that had been presented.'" (Footnotes omitted.) (Emphasis in original.)

The prosecutor here impermissibly expressed his personal belief as to appellant's guilt and credibility. Furthermore, he expressed his personal belief as to the credibility of the witnesses both for the defense and for the prosecution. In doing so he ". . . clearly and improperly intrud[ed] upon the jury's exclusive function of evaluating the credibility of witnesses." *Commonwealth v. Gilman, supra,* 470 Pa. at 191, 368 A.2d at 258–259, quoting from *Commonwealth v. Potter, supra,* 445 Pa. at 287, 285 A.2d at 493.

We conclude that trial counsel's failure to object to the remarks of the assistant district attorney during the closing summation to the jury could have had no reasonable basis designed to effectuate his client's interests, that appellant's post-verdict motions counsel's failure to raise the issue of the effectiveness of appellant's trial counsel in post-verdict motions could have had no reasonable basis designed to effectuate appellant's interests, and that appellant's appellate counsel's failure to raise the issue of the effectiveness of post-verdict motions counsel and trial counsel before the Superior Court, could have had no reasonable basis designed to effectuate appellant's interests.

Judgment of sentence is reversed and the case is remanded for a new trial.

EAGEN, C. J., and O'BRIEN, J., concurred in the result.

JONES, former C. J., did not participate in the decision of this case.

POMEROY, J., did not participate in the consideration or decision of this case.