397 A.2d 1234

COMMONWEALTH of Pennsylvania

v.

Darrell YOUNG, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 12, 1978.

Decided Feb. 16, 1979.

Petition for Allowance of Appeal Denied September 18, 1979.

334

Dennis J. Cogan, Philadelphia, for appellant.

Edward G. Rendell, District Attorney, Philadelphia, for Commonwealth, appellee.

Before PRICE, HESTER, and HOFFMAN, JJ.

HESTER, Judge:

Appellant Darrell Young was convicted by a jury in Philadelphia Common Pleas Court of two counts each of rape, involuntary deviate sexual intercourse, and conspiracy, and one count each of robbery and burglary. Following denial of post-trial motions, a sentence of 6–15 years imprisonment was imposed. On this direct appeal, appellant raises several alleged errors in rulings of the court below. Finding no error, we affirm.

Testimony adduced at trial established the following scenario. In the early morning hours of August 17, 1976, complainants Linda Varichone and Victoria Shelton, ages 19 and 16 respectively, were standing on the front porch of their shared apartment at 1350 Hunting Park Avenue in Philadelphia. A fellow named Robb came to the porch and requested a glass of water. Receiving negative responses, Robb walked away, but soon returned with six other men, all of whom came onto the porch. The two girls were dragged into the house, ordered to disrobe and, over the

next several hours, were forced to perform acts of sex with the intruders.[1] The ordeal lasted almost three hours and, before leaving, the perpetrators warned the victims not to go to the police, or they would be killed. They also told the victims their names, recalled at trial to be Reggie, Robb, Crip, and Psychiatrist. After the men departed, both women discovered property of theirs had been taken.

Miss Shelton quickly telephoned one "Sonny" Moore to whom she related the terrifying experience. Mr. Moore arrived shortly thereafter and consoled the women.

The girls did not report the crime to the police for ten days. On September 14, 1976, the complainants accompanied Detectives Sippel and Brown of the Philadelphia Police Department to the vicinity of Old York Road and Broad Street. At that time the ladies identified appellant, walking along Old York Road, as one of the rapists. Appellant and his co-defendants, Boykin, Key, and Sanford, were arrested shortly thereafter and formally charged. At the East Detective Division, appellant and Boykin gave statements implicating each other and Key and Sanford.

Appellant and his three named confederates were tried jointly, each represented by separate counsel. Before appellant's and Boykin's confessions were introduced by Detective Sippel, the court excised from them all references to other named individuals, in accord with *Bruton v. U. S.,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed. 476 (1968). Appellant's counsel objected, stating he wanted the confessions introduced in the original, as it was critical to his defense that the statements were fabrications of the police. Counsel's theory was as follows: seven men allegedly entered the complainants' apartment. Yet in the two confessions, appellant and Boykin both named only the same four individuals involved and the statements thus contained ironic similarities and common omissions. Counsel proposed to show the jury that only those men whose names had already been supplied to the

1. Another young girl, Darlene Solomon, was staying at the Hunting Park apartment at that time and apparently was also subjected to sexual attacks. Although Miss Solomon testified at trial, appellant was not prosecuted for crimes as to her.

police by the victims were included in the confessions, whereas the defendants *should* have been able to name all their companions, whose names were unknown to the victims. Appellant thus argues that the excision from the statements of the proper names of the co-defendants prevented effective cross-examination of the detective concerning the curious similarities between the two statements vis-a-vis the information supplied by the victims.

In *Bruton v. U. S.*, supra, the Supreme Court held the Sixth Amendment Right to Confrontation is violated if a co-defendant's confession, which inculpates the instant defendant, is used as evidence against the defendant. The jury is thus not permitted to consider the non-testifying, co-defendant's confession in assessing the defendant's culpability. Redaction, in which all testimonial references to anyone other than the declarant are omitted from the confession, has been approved as an appropriate method of protecting a defendant's rights under *Bruton*. *Commonwealth v. Johnson*, 474 Pa. 410, 378 A.2d 859 (1977). It must also be recognized, however, that in certain instances a confession cannot be effectively redacted without prejudicing the declarant. See e. g. *State v. Barnett*, 53 N.J. 559, 252 A.2d 33 (1969) and *People v. Matola*, 259 Cal.App.2d 686, 66 Cal.Rptr. 610 (1968).[2] See also, *Commonwealth v. Nagle*, 253 Pa.Super. 133, 384 A.2d 1264 (1978). Thus, if the deleted portions contain exculpatory material, prejudice can result. In such a case, where redaction is not possible or would work prejudice, the court should either grant a defense motion to sever or forbid any use of the confession. *Commonwealth ex rel. Berkery v. Myers*, 429 Pa. 378, fn 4, 239 A.2d 805, fn 4 (1968). If a defendant sees that his confession cannot be

**2.** *Barnett* was a joint prosecution for murder. In his confession, Barnett admitted being at the murder scene but insisted he did nothing while his co-defendant did the killing. At the insistence of co-defendant's counsel, the statement was redacted to omit any reference to the co-defendant. The New Jersey Court reversed Barnett's conviction, finding the redaction prejudicial to him since the statement as amended left the jury with the impression that Barnett alone was at the scene. *Matola*, likewise, dealt with the deletion of arguably exculpatory material from a co-defendant's confession.

338

redacted without prejudicing him, then he must timely request these alternate remedies. Failure to do so will preclude him from raising the *Bruton* issue on appeal.

The record instantly shows no pre-trial application for severance filed by appellant. Nor did he at any time request the court to exclude the confession on *Bruton* grounds, as suggested in *Myers*. The claim is therefore waived.

Appellant next contends he was improperly restricted in his cross-examination of Linda Varichone. Counsel wished to prove bias on the part of "Sonny" Moore (the prompt complaint witness) by showing an intimate relationship between Mr. Moore and Victoria Shelton. The court denied cross-examination of Miss Varichone on this issue, but we note counsel was permitted to question Miss Shelton about her relationship with Mr. Moore. N.T. 4.66, 4.158. Further, Mr. Moore in turn was cross-examined as to his relationship with Miss Shelton. N.T. 1.445, 1.169–172. The scope and limits of cross-examination are within the discretion of the trial court and will not be reversed in the absence of a clear abuse of that discretion or any error of law. *Commonwealth v. Greene*, 469 Pa. 399, 366 A.2d 234 (1976). Since counsel was allowed to cross-examine Miss Shelton and Mr. Moore as to their mutual affinity, we cannot say it was an abuse of discretion to disallow cross-examination of Miss Varichone as to a relationship collateral to her.

Appellant finally complains that the prosecutor made improper remarks to the jury in his summation. The first such remark occurred when the district attorney reminded the jury that the victims had agreed among themselves not to tell anyone about the rapes for fear of violent reprisals. The prosecutor said "Darlene Solomon made up her mind she wasn't going to tell anyone." N.T. 7.184. We do not find this to be an improper remark, as the victims themselves testified to a secret agreement. N.T. 2.56, 4.31. The prosecutor was thus repeating a fact already in evidence.

The second allegedly improper remark came in reviewing appellant's statement to the police and emphasizing

the consistencies between the confession and the victims' stories. The district attorney said "The detectives will not make errors." N.T. 7.196. We recognize that it is unprofessional conduct for the prosecutor "to express his personal belief as to the truth or falsity of any testimony or evidence . . ." A.B.A. Standards Relating to the Prosecution Function, 5.8(b). See, *Commonwealth v. Starks,* 479 Pa. 51, 387 A.2d 829 (1978) where the prosecutor *continually* emphasized his belief in the truthfulness of the detective's testimony. The Supreme Court found these remarks to convey the D.A.'s "personal belief concerning critical issues at trial in violation of our established standards." id at 832. See also, *Commonwealth v. Pfaff,* 477 Pa. 461, 384 A.2d 1179 (1978). We think the instant, isolated remark does not rise to the level of indiscretion condemned in *Starks* and *Pfaff* and did not deprive appellant of a fair and impartial trial. We note also the prosecutor was immediately admonished before the jury not to give his personal opinion. N.T. 7.196.

Finally, appellant argues the prosecutor improperly made reference to appellant's failure to testify when he stated to the jury, "There's a time to speak. A time to keep silent." N.T. 7.206. Taken in context, it is clear the prosecutor was referring to himself, not appellant. The remark occurred at the close of the prosecutor's summation and he was merely stating that his time to speak was ended and he was going to sit down. To construe the statement as a reference to appellant's Fifth Amendment prerogatives would be an unreasonable strain on the plain meaning of the words in context.

Judgment of Sentence Affirmed.

HOFFMAN, J. files a concurring statement.

HOFFMAN, Judge, concurring:

I am troubled by the majority's holding that appellant has waived his claim that the lower court's editing of his and Boykin's statements deprived him of effective cross-examination of Detectives Sippel and Brown. It is true that appellant's failure to make a timely pretrial motion to sever ordinarily precludes us from reviewing that issue. *Common-*

340

*wealth v. Smith,* 457 Pa. 638, 326 A.2d 60 (1974). However, in *Commonwealth v. Johnson,* 474 Pa. 410, 414, 378 A.2d 859, 861 (1977), our Supreme Court indicated that the Commonwealth is responsible, in the first instance, for moving pretrial for redaction: "It is incumbent upon district attorneys who plan to redact a confession to raise the issue at pretrial, rather than during the trial, so that if redaction is unwarranted, separate trials can be ordered." *Cf. State v. Barnett,* 53 N.J. 559, 252 A.2d 33 (1969), where the New Jersey Rules of Court require the prosecuting attorney to move pretrial for redaction. In the instant case, the Commonwealth did not present the lower court with an opportunity to rule on the redacted versions of appellant's and Boykins' statements until trial, at which time appellant's counsel made a prompt and specific objection. Accordingly, I would reach the merits of appellant's claim. However, after examining appellant's contention I find no abuse of discretion and no prejudice to appellant because appellant's counsel was permitted extensive cross-examination concerning the similarities and dissimilarities between the statements and argued his fabrication theory at length during closing argument. *See Commonwealth v. Greene,* 469 Pa. 399, 404, 366 A.2d 234, 236 (1976); *Commonwealth v. Schmidt,* 437 Pa. 563, 568-69, 263 A.2d 382, 385 (1970).