Commonwealth *v.* Johnson, Appellant.

Submitted March 11, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

Before DOWLING, J.

*Clarence B. Turns, Jr.,* Assistant Public Defender, for appellant.

*Marion E. MacIntyre* and *Rolf W. Bienk,* Deputy District Attorneys, and *LeRoy S. Zimmerman,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., April 3, 1974:

The appellant, Herbert Johnson, was found guilty of aggravated robbery after a trial by jury on October 6-10, 1972, and sentenced on December 21, 1972, to serve 7 to 15 years in prison. He filed neither post-trial motions nor a direct appeal, but later filed a post-conviction hearing petition which was dismissed by the court below without a hearing on April 4, 1973. Appellant then filed, on July 10, 1973, a petition for the allowance of an appeal nunc pro tunc, which was granted by order of the Superior Court, per JACOBS, J., on July 31, 1973.

On this direct appeal, nunc pro tunc, appellant contends that the trial court erred in permitting the in-

troduction into evidence of a co-defendant's statements which implicated appellant in the crime, when the co-defendant did not take the stand. This, appellant argues, violated his right to confront his accusers, guaranteed by the Sixth Amendment and made applicable to the States by the Fourteenth. We agree with appellant that such error was not harmless error and, therefore, will reverse the order of the lower court and remand for a new trial.

The testimony taken at trial revealed the following facts: On May 19, 1972, a man later identified as the appellant by a teller, other bank employees and the co-defendant, Robert Hagood, walked into the bank and, stating that he had a gun, handed the teller a note which told her to give him the money she had. The teller gave him the cash in her drawer, which amounted to $5,017.00. Included in this amount was the "bait money" the teller also slipped into the robber's bag. "Bait money" is money with serial numbers the bank had prerecorded and which is kept separate from the funds a teller normally dispenses during the course of a day's business. The "bait money" in this case consisted of $1,000.00 in marked twenty dollar bills.

Following the robbery the police were summoned and began their investigation of the crime. They obtained a description of the robber from the teller and other bank employees who had seen him leaving the bank. One of the officers, Officer Gates, recognized Robert Hagood, who was standing outside the bank, as the man he had seen with the appellant earlier in the day in the vicinity of the bank. Officer Gates asked Hagood if he had been seen earlier that day with the man the police were now seeking. According to the officer, Hagood said he had. The officer then asked if Hagood would accompany him so that he could identify the appellant, which Hagood subsequently did.

The appellant was apprehended shortly afterwards a few blocks from the bank. He had in his possession $4,897.00, including 44 of the 50 twenty dollar bills used as "bait money" by the bank. (The appellant testified that he had won the this money gambling in Las Vegas and Pittsburgh and had come to Harrisburg to repay money he had borrowed from a friend.)

Hagood was later indicted as a co-defendant and his case was joined with appellant's for trial.[1]

During the trial the prosecutor asked the policeman who had questioned Mr. Hagood as to his whereabouts on the day of the robbery to tell the jury the details of the conversation. The first time an officer was questioned as to the conversation he said he had asked Hagood if the person who committed the robbery was the same person he had seen Hagood with earlier. According to the officer, Hagood said it was. The officer was then asked who the person was whom he had seen Hagood with and he replied, "Herbert Johnson, the defendant." No objection was made to this line of questioning.[2]

---

[1] The charges against Robert Hagood were dismissed, on the court's own motion, at the close of the prosecution's case. He did not take the stand, either as a defendant or as a witness for the prosecution.

[2] The exact language used during this line of questioning is found on pages 42-43 of the trial transcript during the testimony of Officer Gates: "Q. What did you do as a result of your conversations and investigations in the bank? What did you do next, Officer Gates? A. I asked Officer Smith to keep the defendant Hagood at the scene while I left the bank to check the area. Q. I see. Prior to the time you left the bank to check the area, did you speak with the defendant Hagood? A. Yes, sir. Q. And will you tell the jury what that conversation was, please? A. I asked him if the person who had committed the robbery was the same person that I had seen him with earlier in the day. Q. And what was his response to that question? A. He stated that it was. Q. Did you get—when you mentioned you saw a person with Hagood earlier that day, who was it? A. Herbert Johnson, the defendant."

The second time the conversation was discussed at trial, an objection was made by Hagood's counsel, but overruled. This questioning was directed to a second police officer who had spoken with Hagood. His testimony was that Hagood had volunteered the appellant's name and that he had accompanied the police to the station where he identified the appellant as the man who had come out of the bank following the robbery.[3]

The third time the conversation was offered as testimony, an objection by appellant's counsel was sustained on the basis of hearsay. The third officer would have testified that Hagood told him he had seen the

---

[3] The objectionable testimony in this case was introduced during the testimony of Detective Jones, at pages 54-56 of the trial transcript: "By Mr. Eldridge: Q. Did you have an opportunity to speak with the defendant Hagood on the day in question? The Court: You can answer that yes or no. A. Yes, sir. Q. Where did you speak with him? A. At the bank, sir. Q. And will you relate to the jury the conversation you had with the defendant Hagood? Mr. Dils: Well, your Honor, here I would object. I don't know where we're going. I would ask for an offer. I think we're entitled to know what the witness is going to say, whether it is relevant or not. It might be prejudicial; it might be proper. The Court: I don't see the necessity for an offer. Go ahead. By Mr. Eldridge: Q. Tell the jury what your conversation with the defendant Hagood amounted to? A. Well, from the investigation of, on my part and from Officer Gates, we had learned— Mr. Dils: Objection. The Court: That's not responsive. I'll sustain your objection. The question was what did Mr. Hagood say to you? A. He stated that he was earlier outside the bank with Mr. Johnson. He further offered Mr. Johnson's name. At this time I asked him if he would go along for purposes of identification of Mr. Johnson, to which he complied. After Officer Gates had apprehended the defendant Johnson, Mr. Hagood did identify Johnson as being the man he saw coming out of the bank. By the Court: Q. Now wait a minute. He said earlier that he was with him, and then he identified him as the man he saw coming out of the bank? A. Yes, sir. Q. And that he had earlier been with him? A. Yes, sir. The Court: All right."

appellant come running by with "a big smile on his face" while Hagood was standing outside the bank.[4]

This line of questioning caused the appellant to be confronted with a statement of a co-defendant introduced into evidence for the sole purpose of implicating the appellant as the robber of the bank. The co-defendant, whose case was dismissed at the close of the prosecution's evidence, never took the stand to affirm or deny the statement, and was therefore never subjected to cross-examination. The denial of appellant's right to cross-examine the witnesses against him was a constitutional error, a violation of the Sixth and Fourteenth Amendments.

The United States Supreme Court recognized in 1967 that not every admission into evidence of inadmissable hearsay is reversible error. *Bruton v. United States*, 391 U.S. 123, 135 (1967). However, the *Bruton* Court at page 132 also recognized that "a defendant may be prejudiced by the admission in evidence against

---

[4] The following testimony appears of record at pages 60-61 of the trial transcript, during the direct examination of Officer Schmidt: "Q. Did you have occasion to speak with Hagood other than to ask him what he was doing there? A. Yes, sir. Q. Will you tell the Court and the jury what your conversation with Hagood was? A. I had asked him if he had seen— Mr. Turns: Your Honor. I will object to anything that was said by Mr. Hagood to this detective on behalf of Mr. Johnson as it is hearsay. Mr. Diis: There's a further objection, Your Honor. There is no conspiracy shown here, and it is trying to get an admission in by a co-conspirator. The Court: Let's have an offer then. Come up and give me an offer on this (omitting discussion to the jury explaining side bar conferences). The Court: Just what his answer is, so far as you know, with regard to that question. Mr. Eldridge: That he spoke with Hagood and that he was outside the bank and that he saw the defendant come running by with a big smile on his face, the other defendant come running by with a big smile on his face. Mr. Turns: Hearsay. The Court: I am not going to let that in. See that identification on Hagood that's hearsay. We'll sustain your objection."

a co-defendant of a statement or confession made by that co-defendant. This prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand." In *Bruton,* the trial court had admitted into evidence a confession of a co-defendant which implicated the petitioner although the co-defendant did not take the stand. The court felt that such an admission was error of constitutional proportions, in that it denied the petitioner his right to confront the witnesses against him. *Bruton* is controlling in the instant case.

The law is well settled in Pennsylvania that before an error of constitutional proportions may be declared harmless, "the Commonwealth must now demonstrate, beyond a reasonable doubt, that there was no reasonable possibility that the evidence complained of might have contributed to the conviction." *Commonwealth v. Pearson,* 427 Pa. 45, 49, 233 A. 2d 552 (1967) ; *cf., Commonwealth v. Gordon,* 431 Pa. 512, 246 A. 2d 325 (1968), *cert. denied,* 394 U.S. 937 (1969). The inquiry "cannot be merely whether there was enough [evidence] to support the result, apart from the phase affected by the error." *Kotteakos v. United States,* 328 U.S. 750, 765 (1946) ; *Commonwealth v. Blose,* 160 Pa. Superior Ct. 165, 170-171, 50 A. 2d 742, 744-745 (1947) ; *Commonwealth v. Pearson, supra.*

The prosecution has not met this burden in the case now before this court. The prosecution has demonstrated that there are several witnesses to the robbery who identified the appellant as the robber, by physical characteristics and by a description of his clothing. It has shown the appellant to have been in the possession of the "bait money" at the time of his arrest. These factors may be enough to convince a jury of the appellant's guilt. However, we are unable to say to any reasonable certainty that the jury which convicted the appellant did not also take into account the highly

prejudicial identifications made by a co-defendant and introduced into evidence even though the declarant was not called as a witness.

In holding that a new trial is necessary to guarantee appellant a fair trial, we are therefore cognizant that the jury may well find the appellant guilty of aggravated robbery without having before it the inadmissible testimony now disputed. However, as the Supreme Court indicated in *Commonwealth v. Pearson, supra,* that factor alone is not the proper basis on which to decide whether an error in the trial was harmless, if the opinion of the United States Supreme Court in *Chapman v. California,* 386 U.S. 18 (1967) is to have any vitality. "So long as there remains the reasonable possibility that a violation of appellant's constitutional rights might have contributed to his conviction, he must be granted a new trial free of such infirmities." *Commonwealth v. Pearson, supra,* at page 53. We are unable to say beyond a reasonable doubt that the identification of appellant by a co-defendant who did not take the stand did not contribute to appellant's conviction.

This case is remanded for a new trial.