384 A.2d 1264

**COMMONWEALTH of Pennsylvania**

v.

**John Edward NAGLE, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 9, 1976.

Decided April 13, 1978.

Ralph T. Forr, Jr., Altoona, for appellant.

Thomas G. Peoples, Jr., District Attorney, Altoona, submitted a brief for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the trial court abridged his constitutional right to confront and cross-examine his accusers when it permitted the jury to consider his non-testifying codefendant's confession in determining appellant's guilt. We agree and therefore, grant appellant a new trial.

On July 2, 1975, two men robbed a Sheetz Kwik store at Lexington Avenue and Fourth Street in Altoona, Blair County. On July 15, 1975, a single man robbed a Sheetz Kwik store at Union Avenue and Fifth Street in Altoona. The next day, an Altoona police officer arrested one Byron Musselman and charged him with robbing[1] the two Sheetz Kwik stores. On July 18, 1975, an Altoona police officer filed a complaint against appellant accusing him of participating in the July 2, 1975 robbery. Three days later, the police charged appellant with conspiring[2] to commit the July 15 robbery. On August 20, 1975, appellant surrendered himself to Altoona authorities.

On November 3, 5, and 6, 1975, appellant and Musselman (hereinafter co-defendant) were tried before a jury. At trial, a clerk who worked at the Sheetz Kwik store at Lexington Avenue and Fourth Street testified that at 2:50 a. m., on July 2, 1975, two men wearing black nylon stockings

1. The Crimes Code, Act of Dec. 6, 1972, P.L.1482, No. 334, § 1, eff. June 6, 1973; 18 Pa.C.S. § 3701.

2. The Crimes Code, supra; 18 Pa.C.S. § 903.

over their heads robbed the store. One man, about 6'3", was wearing a red shirt and blue jeans and had a gun. His accomplice, about 5'11", was wearing a yellow shirt and blue jeans and wielded a butcher's knife. The clerk could not identify either appellant or his co-defendant as participants in the crime.

A clerk who worked at the Sheetz Kwik store at Union Avenue and Fifth Street testified that a man wearing a blue shirt, blue jeans and a white painter's hat entered the store in the early morning hours of July 15, 1975. The man left; shortly thereafter he returned and robbed the store. The clerk testified that he had identified the co-defendant as the robber at a photographic array arranged by the Altoona police on July 16, 1975. At trial, he also unhesitatingly identified the co-defendant as the robber. A friend of the clerk testified that he saw the co-defendant enter the Sheetz Kwik store on July 15, 1975, and subsequently leave. The friend then departed. This witness identified the co-defendant at a July 17 photographic array and at trial. A police officer confirmed that the clerk and his friend had made pre-trial identifications of the co-defendant.

The prosecutor then read into evidence, over objection, a confession of the co-defendant obtained by the police on July 18, 1975. Whenever the confession referred to appellant by name, the prosecutor deleted appellant's name and substituted a blank. (hereinafter _____). In his confession, the co-defendant asserted that _____ had made the decision to commit the July 2 robbery. _____ and he walked into the Sheetz Kwik store whereupon _____ pulled a gun out of his pocket and handed the co-defendant a butcher knife. The two men put black nylon stockings over their heads and walked up to the counter. _____ reassured the co-defendant that he knew what he was doing because he had previous criminal experience in different towns. _____ then demanded that the clerk transfer the money in the cash register into a brown paper bag. At this juncture, the co-defendant declared that he was not going to do it and threw the butcher knife down on the counter. _____

grabbed the money and _____ and the co-defendant ran out of the store, jumped into _____'s car and drove to the co-defendant's apartment. The co-defendant stated that _____ was wearing a red shirt and carried a small gun.

The prosecutor then read into evidence that part of the co-defendant's confession which concerned the July 15 robbery. According to the co-defendant, _____ drove him to the Sheetz Kwik store at Union Avenue and Fifth Street. _____ handed the co-defendant a gun, the same gun that _____ used to commit the earlier robbery, and instructed him to rob the store while _____ waited in the car. The co-defendant walked into the store and robbed it; he then ran out of the store and started to run up Fifth Avenue. _____ drove up and told him to get into _____'s car; the co-defendant complied and the two men escaped. The co-defendant stated that he was wearing a blue shirt, blue jeans and a white painter's cap. After the prosecutor finished reading the co-defendant's statement, the trial court instructed the jury that the Constitution entitles a person to confront the witnesses appearing against him and, accordingly, the identity of the other participant in the crimes had been deleted. The court stated: "The statement, therefore, can only be considered against the maker of the statement, [the co-defendant], and the facts therein can be considered by you and you will determine what the true and correct facts of the situation may be."

The prosecutor next read into evidence a statement that appellant made to the police on August 20, 1975. The prosecutor substituted _____ whenever appellant mentioned his co-defendant's name. Appellant stated that on July 15, 1975, he drove _____ over to the Sheetz Kwik store at Fifth Street and Union Avenue, but he did not know that _____ intended to rob it. _____ took appellant's pistol without appellant's knowledge or consent. _____ went into the store. After _____ ran out of the store with money in his hand and ran up Fifth Street, appellant picked him up and drove away. Appellant stated that _____ wore a white painter's hat during the above events. When _____ offered

appellant some of the proceeds of the robbery, appellant at first accepted the money. Later, appellant returned this money to _____. On the day that _____ was arrested, appellant left for West Virginia. He returned to Pennsylvania and surrendered himself to the authorities when he became aware that the police had issued a warrant for his arrest. After the prosecutor finished reading appellant's statement, the court instructed the jury that the statement did not relate to the July 2, 1975 robbery and could not be considered in connection with that offense in any way. Insofar as the statement referred to the July 15 robbery, the statement could only be considered as evidence against appellant. The Commonwealth and the defense then rested.

The lower court gave the following instructions during its charge to the jury: "They are both out-of-court statements and when they are made with the statement of one defendant implicating another, this constitutes a violation of the Sixth Amendment right to confrontation and, therefore, the out-of-court statement of [co-defendant] cannot be used insofar as [appellant] is concerned. [Appellant's] out-of-court statement cannot be used insofar as [the co-defendant] is concerned. However, I also charge you that the confession or statement of a co-defendant read into evidence without mentioning the name of the other defendant does not constitute a violation of the Sixth Amendment right. In other words when the statement is read into evidence and the identity of the other party is not read in connection with any such statement, no violation of the Sixth Amendment right has been committed; and the statement may be used not to identify by name the defendant or other defendant involved, but you have the right under the law to consider the other factual statement or objective statement as they have been referred to to aid or assist you in determining whom if possible, if you're able so to do and if the Commonwealth has established it beyond a reasonable doubt whom the other actor was that was involved in the litigation in question." Subsequently, the court reiterated that the jury could not consider either statement against the maker's

co-defendant, "except as to factual matters which may be of aid or assistance to you in determining what the true facts of this case may be." At the conclusion of the court's charge, the attorneys for appellant and his co-defendant took exception to the court's charge in regards to the use the jury could make of the statements against the non-maker. The court refused to modify its charge.

On November 6, 1975, the jury found appellant and his co-defendant guilty of all offenses charged, and on March 15, 1976, the lower court sentenced appellant to a 2–5 years' term of imprisonment for the July 22 robbery and a consecutive 3–7 years' term of imprisonment for conspiring to commit the July 15 robbery. The court also required appellant to make restitution to the Sheetz Kwik stores and to pay Blair County a total of $300 in fines. This appeal followed.

Appellant contends that the lower court infringed upon his constitutional right to confront and cross-examine his accusers because it permitted the jury to consider his non-testifying co-defendant's confession in assessing appellant's culpability. In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the prosecutor introduced a non-testifying co-defendant's confession into evidence. The confession inculpated the defendant-petitioner. The trial court instructed the jury that it could not consider the co-defendant's statement as evidence against the defendant in any way. Nevertheless, the Supreme Court held that: "[B]ecause of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of the [co-defendant's] confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." 391 U.S. at 126, 88 S.Ct. at 1622. The Court expatiated on its holding ". . . [T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury

system cannot be ignored." [citations omitted]. Such a context is presented here, where the "powerfully incriminating extrajudicial statements of a co-defendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed. *Pointer v. State of Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)." 391 U.S. at 135–36, 88 S.Ct. at 1628 (footnotes omitted). Because the Due Process Clause of the Fourteenth Amendment of the United States Constitution incorporates the right to confront and cross-examine one's accusers guaranteed by the Sixth Amendment, the rule of *Bruton v. United States* is applicable in state criminal proceedings. See *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Pointer v. Texas,* supra; *Commonwealth v. Ransom*, 446 Pa. 457, 288 A.2d 762 (1972).

The Supreme Court in *Bruton v. United States,* supra, 391 U.S. at 133–34, 88 S.Ct. 1620, suggested that viable alternatives might exist which would allow the prosecution to introduce a co-defendant's confession at a joint trial in order to prove the confessor's guilt without simultaneously vitiating the non-confessor's right of confrontation. In a footnote, supra at 133, note 10, 88 S.Ct. 1620, the Court noted that some courts favored the deletion of references to other defendants when practicable in joint trials while other commentators believed that redaction was an ineffective and prejudicial practice. In *Commonwealth v. Johnson,* 474 Pa. 410, 378 A.2d 859 (1977), our Supreme Court sanctioned the practice of excising references to a defendant's name when the confession of a non-testifying co-defendant is intro-

duced, provided that the confession does not contain a hint or trace of the defendant's participation in the crime.[3] Nevertheless, the trial court's instructions violated appellant's constitutional right to confront and cross-examine his accusers.

First, the trial court's charge made it quite clear that it was appellant's name which had been deleted from his co-defendant's confession. "They are both out-of-court statements and when they are made with the statement of one defendant implicating another, this constitutes a violation of the Sixth Amendment right to confrontation and, therefore, the out-of-court statement of [the co-defendant] cannot be used insofar as [appellant] is concerned. . . . However, I also charge you that the confession or statement of a co-defendant read into evidence without mentioning the name of the other defendant does not constitute a violation of the Sixth Amendment right." This exposition of Sixth Amendment rights informed the jury that appellant could not complain because *his name* had been excised from the co-defendant's confession. Even if redaction arguably pro-

3. The *American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance*, § 2.3 (1968), (promulgated before the Supreme Court articulated the rule of *Bruton v. United States*) would require that all references to a nonconfessing defendant must be *effectively* deleted. The commentary to § 2.3 notes that: "[T]here are, of course, instances in which such editing is not possible; the references to the co-defendant may be so frequent or so closely interrelated with references to the maker's conduct that little would be left of the statement after editing. [citations omitted]

". . . It is not enough to merely delete his name; if the statement indicates that another unnamed party is involved in the crime, the jury is nearly certain to draw the inference that the co-defendant is this party."

A Pennsylvania Supreme Court subcommittee for Proposed Jury Instructions, has also worried over the fairness and effectiveness of the procedure of deleting references. "With the run-of-the-mill confession can all risk of prejudice to the non-confessing defendant be eliminated by any means short of amending the confession to make it appear that the defendant acted alone or with named persons other than the co-defendant?" *See Pa. Standard Jury Instructions, Criminal, Subcommittee Draft*, § 3.12 at 51. *See also Posey v. United States*, 416 F.2d 545, (5th Cir. 1969), cert. denied, 397 U.S. 946, 90 S.Ct. 965, 25 L.Ed.2d 127.

tects a non-confessing defendant when his name is *effective-ly* deleted from the confession, the trial court's charge manifestly reinserted appellant's name back into the confession. In short, given the lower court's charge, the instant case assumes the posture of *Bruton v. United States,* supra; the lower court's cautionary instructions could not offset the likelihood that the non-testifying co-defendant's confession would seriously contaminate the jury's deliberations over appellant's case.

Second, the lower court erroneously instructed the jury that it could consider facts referred to in the co-defendant's statement in determining "whom [sic] the other actor was that was involved in the litigation in question." Such a charge eviscerates the protection afforded an accused by the Confrontation Clause and *Bruton v. United States*: it directs the jury to consider inadmissible hearsay[4] directly linking appellant to the offenses charged without allowing appellant an opportunity to confront his accuser and to test his allegations before a jury. Our Supreme Court has recognized the devastating effect and error of a charge permitting the jury to consider a non-testifying accomplice's statement in determining the facts of the case. *Commonwealth v. McDowell,* 460 Pa. 474, 333 A.2d 872 (1975).[5]

The facts of the case at bar illustrate the deleterious consequences of the trial court's charge. If we temporarily ignore the co-defendant's confession, there is no evidence

**4.** Because the object of the conspiracy had already been completed and the co-defendant had been taken into custody, his statements were not admissible under the co-conspirator exception to the hearsay rule. *See Commonwealth v. Ransom,* supra. *See also Commonwealth v. Porter,* 449 Pa. 153, 295 A.2d 311 (1972).

**5.** The subcommittee draft on the use of a co-defendant's confession at a joint trial, *Pa. Standard Jury Instructions,* supra, suggests that if the court does admit a confession with deletions that might cause the jury to speculate about the original text, the trial court should instruct the jury not to consider the statement *in any way* against the non-confessing defendant. *See also Posey v. United States,* supra, in which a Fifth Circuit panel emphasized the importance of deleting any facts in a confession which might tend to identify the non-confessing defendant as the person referred to as _____. *See also ABA Project on Minimum Standards,* supra.

linking appellant to the July 2 robbery. The residuum of evidence can be briefly recapitulated: the store clerk testified that a 6′3″ man brandishing a gun and wearing a red shirt was one of the two robbers and the co-defendant admitted that he was the other robber.[6] The co-defendant's confession connected appellant with the July 2 robbery because it stated that _____ wore a red shirt and employed the same gun that _____ had given the co-defendant to use in the second robbery. Appellant in his statement admitted that he owned the gun that the co-defendant had obtained from his car and used in the July 15 robbery. In order to convict appellant of committing the July 2 robbery, the jury, per force, must have relied upon the co-defendant's statement as establishing that appellant's gun was in fact used in the first robbery and that appellant did in fact wear a red shirt during the commission of the robbery. *Cf. Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

The trial court's charge also poisoned the jury's consideration of appellant's culpability for conspiring to commit the July 15 robbery. In his statement, appellant asserted that he drove the co-defendant to the store and that the co-defendant removed a pistol from his car without appellant's knowledge or consent. The co-defendant, however, averred that _____ drove him to the store, handed him a gun, and instructed him to rob the store. The trial court's charge permitted the jury to make the crucial determination that someone did in fact hand the co-defendant *appellant's gun*; the jury was confronted with the inescapable inference that

---

**6.** The prosecutor agreed with this summation of the facts. In response to appellant's demurrer to the evidence, he stated, at sidebar: "Insofar as the robbery on July second, it is our position . . . The only testimony we have to substantiate his position is the fact that the record shows two things: One, the respective sizes of the parties is established by the victims involved; and the fact that the larger of the two had a red shirt and then in the statement of [co-defendant] he says his . . . the man that was with him (blank) has a red shirt on. Now he denies any statement, of course, he had anything to do with it and we haven't got that in the record.
 "I don't think we can hold him for the robbery . . . I don't subscribe to the same position insofar as the conspiracy is concerned. . . ."

appellant was the someone who gave the gun to the co-defendant. We certainly cannot say beyond a reasonable doubt that the trial court's error did not contribute to appellant's convictions.[7] *Harrington v. California,* supra; *Commonwealth v. Johnson,* 227 Pa.Super. 96, 323 A.2d 813 (1974).[8] Therefore, we grant appellant a new trial on both charges.

Judgments of sentence vacated and new trials granted on both charges.

VAN der VOORT, J., files a dissenting opinion in which PRICE, J., joins.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

VAN der VOORT, Judge, dissenting:

I respectfully dissent. Appellant appeals to our Court from convictions before a jury and judge of the crimes of robbery and criminal conspiracy. He assigns a number of reasons why he should have judgment arrested or a new

7. After deliberating for a while, the jury asked the trial court if it could hear appellant's statement once more. The court refused this request. This query indicates that the jury may have been in some doubt as to appellant's complicity in both robberies and may have turned to the co-defendant's confession for reassurance.

8. Appellant's co-defendant, Musselman, has filed a separate appeal (J. 1632/1976) in which he contends that the trial court erroneously allowed the jury to consider appellant—Nagle's statement in determining his guilt. We believe that the trial court's error was harmless beyond a reasonable doubt vis-a-vis Musselman. Nagle's statement did not connect Musselman in any way with the July 2, 1975 robbery. Therefore, the jury could not have relied on Nagle's statement in convicting Musselman of this crime. As to the July 15, 1975 robbery, Nagle's statement did implicate Musselman. However, the store clerk identified Musselman, without any hesitation, as the robber, and Musselman himself confessed to the crime. Musselman did not challenge the reliability or voluntariness of his confession before the jury. We believe that the jury would not have found the Commonwealth's case significantly less persuasive had Nagle's statement been excluded. Therefore, the judge's charge with respect to Nagle's statement was harmless error. *See Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

trial granted. We shall discuss these issues in the order in which they are raised. A recitation of the facts is necessary for a better understanding of the issues.

Viewing the evidence in the light most favorable to the Commonwealth as we must since it is the verdict winner, the following facts appear. There are two stores, in the City of Altoona, involved in this appeal. They are named Sheetz Kwik Shopper. One is located at Lexington Avenue and Fourth Street (Lexington Kwik), the other at Union Avenue and Fifth Avenue (Union Kwik). On July 2, 1975, two masked men, one armed with a gun, the other with a knife, at 2:50 A.M., robbed Lexington Kwik and fled in an automobile. On July 15, 1975, one man armed with a gun (which although shaped like an automatic was actually a starter pistol) at 12:43 A.M. robbed Union Kwik. He escaped in the automobile of John Edward Nagle who was waiting outside to pick him up. The loot was divided although Nagle claimed he returned his share to his accomplice.

On July 16, 1975, Byron D. Musselman was arrested and charged with robbery of the two stores. He made a confession in which he implicated Nagle. On August 20, 1975, Nagle gave himself up to the police. He was charged with robbery[1] of Lexington Kwik (On July 2, 1975) and with criminal conspiracy[2] in connection with the robbery of that store (On July 15, 1975). Nagle made a confession in which he also involved Musselman, hereinafter referred to as the co-defendant.

Both defendants were tried together. Nagle was found guilty of robbery of Lexington Kwik and of criminal conspiracy in connection with the robbery of Union Kwik. He was sentenced to not less than three nor more than seven years on the conspiracy charge and two to five years on the robbery to run consecutively.[3]

1. Act of Dec. 6, 1972, P.L. 1482 No. 334, 18 Pa.C.S. § 3701.

2. Act of Dec. 6, 1972, P.L. 1482 No. 334, 18 Pa.C.S. § 903.

3. Musselman was also found guilty on both charges of robbery.

During the course of the trial the confession of each defendant was introduced into evidence. The name of the non-signing defendant was blotted out of each confession, that is in Musselman's confession Nagle's name was deleted. The trial judge gave cautionary or limiting instructions to the jury both at the time the confessions were read into evidence and during his charge to the jury. The trial judge instructed the jury that each confession could be used solely against the party making it and not against the other party. Appellant claims it was error to allow the confessions into evidence. He relies on *Bruton v. United States*, 391 U.S. 123, 86 S.Ct. 1620, 20 L.Ed.2d 476 (1968) wherein the Supreme Court held that an accused's right to cross-examination is violated when during a joint trial the confession of a co-defendant inculpating the accused is admitted into evidence but the co-defendant, the maker of the confession does not testify. The Supreme Court held this to be so notwithstanding instructions to the jury that the co-defendant's confession could not be considered and must be disregarded by the jury in determining the accused's guilt or innocence. In *Bruton* the accused's name appeared in the co-defendant's confession. It was on the basis that the jury heard an out of court statement implicating the accused who had no opportunity to test the truthfulness of it that the Supreme Court held the accused had been denied his right of confrontation and cross-examination of the witnesses against him. In *Bruton* it was suggested by the court that a possible means of assuring that a defendant's right to cross-examination was not abridged and at the same time allowing the admission of a co-defendant's confession into evidence was to delete the name of the defendant from the confession. See *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) footnote 10. Recently the Pennsylvania Supreme Court decided *Commonwealth v. Johnson*, 474 Pa. 410, 378 A.2d 859 (1977) wherein it held that a co-defendant's confession could be admitted into evidence against a defendant provided the defendant's name is deleted, the narrative integrity of the confession is not altered and the confession does not refer to the defendant. This is to assure

that the defendant's sixth amendment rights are not violated. The majority in the instant case maintains that the deletion of the appellant's name was not sufficient to protect his sixth amendment rights. The majority correctly points out that the purpose of the right to confrontation is to test the truthfulness of the statements contained in the confession. However, with respect to the conspiracy charge, a review of the facts establishes that the truthfulness of the statements were sufficiently tested and therefore the admission of the co-defendant's confession with the appellant's name deleted was proper. The confession of Musselman did not attempt to exculpate himself and inculpate Nagle alone, but in its language involved both parties in both robberies.[4] Musselman's statements were competent evidence. They were statements against his penal interest and hence although made out of court were exceptions to the hearsay rule and were qualified to be considered by the fact finder. *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). *Commonwealth v. Nash*, 457 Pa. 296, 324 A.2d 344 (1974); *Commonwealth v. Hackett*, 225 Pa.Super. 22, 307 A.2d 334 (1973).[5] The truthfulness of Musselman's statements were tested in large measure by being

4. While Musselman's confession tried to depict Nagle as the "leader" he nevertheless confessed to his own participation in the robberies.

5. Cf. *Commonwealth v. Colon*, 461 Pa. 577, 337 A.2d 554 (1975). In *Colon* the court concluded that the facts contained in a declarant's confession which exculpated a possible accomplice were not statements against interest and hence were inadmissible. However, the court stated that portion of the confession which contained facts contrary to the declarant's penal interest fell within the exception to the hearsay rule and would have been admissible had it not been that it was deemed irrelevant to the Commonwealth's case against the defendant. In the instant case, Musselman's statement involved both himself and the appellant insofar as they acted in concert in committing the Union Kwik robbery. In other words their actions were directly related to each other, and therefore the statement implicated Musselman in two crimes, i. e., criminal conspiracy and robbery. Furthermore, Nagle's statement corroborated nearly all of the facts related to that particular robbery contained in Musselman's statement and thus added to its trustworthiness. On the basis of this distinction from the facts of *Colon*, it is not necessary to consider the problem of possible divisibility of the Musselman statement and it was properly admitted in its entirety as competent evidence.

against his own penal interest. Furthermore insofar as the Union Kwik (July 15th) robbery is concerned the truthfulness of Musselman's statements were tested further by the confession of Nagle which corroborated the statements in Musselman's confession. Inasmuch as the truth of the Musselman confession was tested in two ways, one by being against his penal interest and two by Nagle's own corroborating confession there is no reason or need for cross-examination by Nagle of his nontestifying co-defendant Musselman. Nagle's confession was to the Union Kwik (July 15th) robbery only. He did not confess to the Lexington Kwik (July 2nd) robbery. Inasmuch as Musselman's statements implicating Nagle in the Lexington Kwik robbery were not corroborated by Nagle in his confession or otherwise, I find that he was denied his right of cross-examination as to the Lexington Kwik robbery. I find this notwithstanding the facts that Nagle's name was deleted from Musselman's confession, that the trial judge gave cautionary instructions to the jury and that Musselman's confession was against his penal interest and did not attempt to exculpate himself and inculpate Nagle.

Appellant's next argument maintains that the lower court erred in denying his demurrer to the evidence in the Lexington Kwik case. In the light of the evidence introduced at trial the demurrer was properly refused. I would not decide what the decision should be if a demurrer is made in the retrial.

Appellant next argues that the lower court erred in permitting the introduction into evidence of his waiver of rights. He maintains that the waiver had no relevancy to the proceedings and only served to prejudice his case. However, the lower court permitted the waiver to be introduced for the purpose of showing that the appellant's statement which was also introduced was given voluntarily. In *Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286 (1972), a case cited by the appellant, the Pennsylvania Supreme Court stated at 448 Pa. on page 388, 292 A.2d on page 289:

Any analysis of the admissibility of a particular type of evidence must start with a threshold inquiry as to its relevance and probative value. A leading commentator has suggested the following desideratum for relevancy: "[D]oes the evidence offered render the desired inference more probable than it would be without the evidence? . . . Relevant evidence, then, is evidence that in some degree advances the inquiry, and thus has probative value, and is prima facie admissible." McCormick, Evidence, § 152 at 318–19 (1954) (emphasis in original); (Wigmore, Evidence, §§ 9–10 at 289–95, 3rd ed. 1940).

Whether or not a statement made by a defendant is voluntary is essential to the admissibility of the statement into evidence. Therefore any evidence that would have a bearing on the issue of voluntariness is essential. I find the lower court did not err in permitting the appellant's waiver of rights to be admitted for the purpose of showing that his statement to the police was voluntary.

Appellant also argues that the statement itself should not have been admitted into evidence. He maintains that the reading into evidence of his statement [6] constituted a denial of his right against self incrimination guaranteed by the Fifth Amendment of the United States Constitution because the statement was not a confession or admission but was totally exculpatory. However, the reasoning of his argument is not sound. If, as he states, the statement was not an admission or a confession then the reading of it into evidence can hardly be called a violation of his right against self incrimination. He refers to the statement as being exculpatory thus its admission could only serve to help him.

**6.** Appellant's statement acknowledged the fact that he was with the co-defendant on July 15, 1975, when the Union Kwik was robbed. However, appellant maintained throughout his statement that he had no idea that the co-defendant was going to rob the store. He stated that the co-defendant obtained the starter's pistol, which belonged to the appellant and which was used in the robbery, from under the front seat of his car. He further stated that he picked up the co-defendant in his car after he saw him come out of the store with money in his hand and start running down the street. He also stated that initially he took half the money obtained from the robbery but later gave it back to the co-defendant.

This possibility was even further advanced by the admission of his waiver which established that the statement was voluntary. Appellant cites no authority for his position that if a statement is not an admission or confession then it cannot be admitted into evidence. I therefore find that the lower court did not err when it allowed appellant's statement to be read into evidence.

Appellant also argues that the verdict was contrary to the law, and contrary to the evidence. As I stated above, the statement of the co-defendant was properly admitted as was the statement of the appellant. These statements along with the other evidence introduced by the Commonwealth were sufficient to sustain the verdicts and therefore the verdicts cannot be said to be contrary to the evidence.

> The test of the sufficiency of the evidence—irrespective of whether it is direct or circumstantial, or both—is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which if believed the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted. *Commonwealth v. Frye*, 433 Pa. 473, 481, 252 A.2d 580, 584 (1969).

Finally, appellant argues that the sentences imposed for his involvement in the two robberies was excessive. In view of the way I would dispose of this case, calling for a retrial and for resentencing it is not necessary to consider the claim of excessive sentences.

I would reverse and remand for a new trial at No. 938 of 1975 of the court below. I would affirm at Number 937 of 1975 of the court below and provide that upon the conclusion of the proceedings in the court below at its Number 938 of 1975 the sentence at Number 937 of 1975 shall be vacated for resentencing by the court below.

PRICE, J., joins in this dissenting opinion.